Jeffrey C. Jaegly,                                             Case No. 16-cv-1982

                       Plaintiff

        v.                                                     MEMORANDUM OPINION


Lucas County Board of Commissioners, et al.,

                       Defendants

## I.        INTRODUCTION

Before me is Defendant Lucas County Common Pleas Court, Domestic Relations Division's

motion for reconsideration.  (Doc. No. 33).  Plaintiff Jeffrey C. Jaegly opposed the motion (Doc.

No. 34), and Defendant replied.  (Doc. No. 35).

## II.        BACKGROUND

On September 28, 2017, I denied Defendant Lucas County Common Pleas Court's motion

to dismiss.  (Doc. No. 31).  In holding the Lucas County Common Pleas Court could be sued in this

action, I rested primarily on the factually-analogous, published Sixth Circuit case of *Popovich v.*

*Cuyahoga County Court of Common Pleas, Domestic Relations Division,* 276 F.3d 808 (6th Cir.) (en banc),

*cert. denied*, 537 U.S. 812 (2002).  In *Popovich*, the Circuit held Title II of the Americans with

Disabilities Act had validly abrogated Eleventh Amendment Sovereign immunity.  *Id.* at 813-16.

The Circuit remanded the case against the state court for retrial because "refusal of the state court to

provide plaintiff with closed captioned translation of the proceeding, or other forms of hearing

assistance, may constitute an unreasonable exclusion of plaintiff from participation in the proceeding

under principles of due process of law."  *Id.* at 817.  Because the Circuit had allowed the case to

proceed against the state court, I held the Lucas County Common Pleas Court had the capacity to be sued in this action.

### III.    STANDARD

Rule 54(b) provides that any order or decision, other than a "final judgment" entered as described in the text of the Rule, "that adjudicates fewer than all the claims . . . of fewer than all the parties does not end the action as to any of the claims or parties   . . . may be revisited at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).  "The major grounds justifying reconsideration of interlocutory orders are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998) (*citing Petition of U.S. Steel Corp.*, 479 F.2d 489 (6th Cir. 1973), *cert. denied, Fuhrman v. U.S. Steel Corp.*, 414 U.S. 859 (1973)); *see also Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991) (*citing Marconi Wireless Tel. Co. of America v. United States*, 320 U.S. 1, 47-48 (1943) ("District courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment.")).

### IV.    DISCUSSION

The Lucas County Common Pleas Court moves for reconsideration on the issue of capacity on grounds of "clear error of law."  (Doc. No. 33).  Specifically, Defendant respectfully states that the Opinion conflated the issue of capacity with that of immunity.  In support, Defendant asserts that *Popovich* addressed only the issue of immunity, not capacity.  I find Defendant's argument persuasive and will reconsider whether the Lucas County Common Pleas Court, Domestic Relation Division has the capacity to be sued in this action.

Federal Rule of Civil Procedure 17(b) defines how to determine whether a party has the capacity to sue or be sued.  Since the court is neither an individual nor a corporation, its capacity to be sued is determined "by the law of the state where the court is located."  FED. R. CIV. P. 17(b)(3).

2

In Ohio, "[a]bsent express statutory authority, a court can neither sue nor be sued in its own right." *State ex rel. Cleveland Mun. Ct. v. Cleveland City Council*, 34 Ohio St. 2d 120, 121 (1973); *see also Malone v. Ct. Com. Pl. of Cuyahoga Cnty.*, 45 Ohio St. 2d 245, 248 (1976). Defendant asserts "[t]here is no federal or Ohio authority contradicting [the] precedent" that an Ohio court may not be sued. (Doc. No. 33-1 at 3). While Jaegly relies upon the unpublished memorandum opinion[1] found on PACER to contradict this argument, he cites no other authority nor did I find any precedent through independent research, in which an Ohio court was found to have capacity to be sued. But, contrary to Defendant's argument, the lack of precedent alone does not lead to the conclusion that an Ohio court may never be sued. Instead, to comply with Ohio law and, in turn, Rule 17(b)(3), I must evaluate whether "express statutory authority" exists to assert a claim against an Ohio court before concluding the court lacks capacity.

Ohio courts have not addressed whether the "express statutory authority" is confined to Ohio statutory authority or if it encompasses federal statutory authority as well. There is also no controlling federal precedent on the issue or uniform approach used by my trial court colleagues who have analyzed whether capacity exists to sue an Ohio court. *See, e.g., Lawson v. City of Youngstown*, 912 F. Supp.2d 527, 530 (N.D. Ohio 2012) ("[T]he State of Ohio is the only entity capable of providing express authority for a court to be sued—Title VII cannot provide that authority."); *Cahan v. Summit Cnty. Ct. Com. Pl. Dom. Rel. Div.*, No. 5:16-cv-2642, 2017 WL 2465000, at *5 (N. D. Ohio June 7, 2017) (quoting *Lawson*); *but see, e.g., Hatzidakis v. Lucas Cnty. Com. Pl. Ct.*, No. 3:11CV00169, 2013 WL 3243629, at *2-*3 (N.D. Ohio June 25, 2013) (analyzing whether Title VII or O.R.C. § 4112.01 provided the "express statutory authority" for the court to be sued); *Evans v. Codray*, No. 2:09-cv-587, 2012 WL 1021698, at *3-*4 (S.D. Ohio Mar. 26, 2012) (holding there was no "express

---

[1] *Popovich v. Cuyahoga Cnty. Ct. Com. Pl., Dom. Rel. Div.*, No. 1:95-cv-684, Doc. No. 172 at 23-24 (N.D. Ohio Sept. 30, 2004).

statutory authority" because a court was not within the definition of a person under 42 U.S.C. § 1983).

In fact, though Defendant argues only Ohio statutory law may provide the "express statutory authority," relying on *Cahan* and *Lawson*, Defendant also cites favorably to *Hatzidakis* which analyzed whether Title VII, a federal law, provided the "express statutory authority" necessary to sue an Ohio court.

After reviewing the cases cited by Defendant, conducting independent research, and considering policy issues, I find state or federal law may provide the "express statutory authority" necessary to sue an Ohio court. The plaintiffs in both *Lawson* and *Cahan* asserted employment discrimination claims under both Ohio and federal law.

Here, Jaegly has no avenue of relief under Ohio law as there is no analogous Ohio statute to Title II of the ADA or Section 504 of the Rehabilitation Act. As a matter of policy, it is illogical to require that an Ohio statute provide the authority to assert a right exclusively available under federal law. This is especially true in the case of Title II of the ADA, enacted to address "unconstitutional treatment of disabled persons by state agencies." *Tennessee v. Lane*, 541 U.S. 509, 524-25 (2004). Specifically, "Title II is aimed at the enforcement of a variety of basic rights, including the right of access to the courts." *Id.* at 527-28 (discussing testimony, statistics, and the Congressional task force revealing "that many individuals, in many States across the country, were being excluded from courthouses and court proceedings by reason of their disabilities."). Therefore, to reconcile the state and federal interest, in compliance with Rule 17(b)(3), I will evaluate whether Title II of the ADA or Section 504 of the Rehabilitation Act provide the "express statutory authority" to sue an Ohio court.

A.      Title II of the ADA

Title II of the Americans with Disabilities Act states, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such

entity." 42 U.S.C. § 12132. A "public entity" includes "any department, agency, special purpose

district, or other instrumentality of a State or States or local government." 42 U.S.C. § 12131(1)(B).

As quoted by Defendant, "[a] court is an instrumentality of government." *State ex rel. Mayer v. City of*

*Cincinnati*, 60 Ohio App. 119 (Ohio Ct. App. 1938); *see also Mumford v. Basinski*, 105 F.3d 264, 269 n.7

(6th Cir. 1997) ("[T]he common pleas courts remain instrumentalities of *state* government.")

(emphasis in original) (citing *Dalton v. Bureau of Criminal Identification and Investigation*, 39 Ohio App. 3d

123 (Ohio Ct. App. 1957), and *Tymcio v. State*, 52 Ohio App. 2d 298, 301 (Ohio Ct. App. 1977), each

stating "the court of common pleas of each county is a state court and an instrumentality of the

state."). Defendant does not offer an argument as to why it should not be considered a "public

entity." Rather, it argues the term "public entity" alone does not convey "*express* statutory

authority."

In *Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206 (1998), the Supreme Court

confronted a similar issue in determining whether a state prison was within the definition of a

"public entity." The Pennsylvania Department of Corrections first argued state prisons were not

covered by the ADA for the same reasons state judges were not covered by the Age Discrimination

in Employment Act in *Gregory v. Ashcroft*, 501 U.S. 452 (1991). *Pennsylvania Dep't of Corrections*, 524

U.S. at 208. Penning the majority opinion, Justice Antonin Scalia rejected the argument. Justice

Scalia applied the same canon of construction as that applied in *Gregory*, "that absent an

'unmistakably clear' expression of intent to 'alter the usual constitutional balance between the States

and the Federal Government,' we will interpret a statute to preserve rather than destroy the States'

'substantial sovereign powers.'" *Id.* at 208-09 (quoting *Gregory*, 501 U.S. at 460-61).

But he distinguished the ADEA, which contained an exception for "appointee[s] on the

policymaking level," in holding that "the ADA plainly covers state institutions *without* any exception

that could cast the coverage of prisons into doubt." *Id.* at 210-11 (emphasis in original) (quoting

*Gregory*, 501 U.S. at 467, and 42 U.S.C. §§ 12131(1)(B) & 12132). Additionally, the Department of

Corrections argued the ADA should not be applied to prisons because the findings and purpose of the ADA, articulated in 42 U.S.C. § 12101, did not explicitly mention prisons. *Id.* at 211-12. Justice Scalia also rejected this argument, stating that even if Congress did not contemplate application to prisons when enacting the ADA, "the fact that a statute can be "'applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth.'"" *Id.* at 212 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 499 (1985) (citation omitted)).

Applying the reasoning used by Justice Scalia with respect to prisons, I find courts to be squarely within the definition of "public entity." Title II of the ADA does not contain any language which would indicate courts, an instrumentality of the state government, are not within the definition. Further, as discussed above, Title II of the ADA was enacted to address, among other things, discrimination against disabled persons with respect to access to the courts. *Lane*, 541 U.S. at 527-28. Because courts are within the broad but unambiguous definition of "public entity," I find Title II of the ADA provides the "express statutory authority" necessary to sue an Ohio court.

B.      Rehabilitation Act

Section 504 of the Rehabilitation Act provides, "No otherwise qualified individual with a disability in the United States…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). "[T]he term "program or activity" means "all of the operations of a department, agency, special purpose district, or other instrumentality of a State or of a local government." 29 U.S.C. § 794(b)(1)(A).

The language of Section 504 of the Rehabilitation Act is nearly identical to Title II of the ADA and has been interpreted in the same manner. *See, e.g., Key v. Grayson*, 179 F.3d 996, 997 (6th Cir. 1999) (stating that, after the decision in *Yeskey*, "it is now established that the ADA and the Rehabilitation Act apply to prisoners."). Like the ADA, the Rehabilitation Act provides no exception and was enacted to address the same type of discrimination against individuals with

disabilities. *Compare* Rehabilitation Act, 29 U.S.C. § 701(a)(5) (finding "individuals with disabilities continually encounter various forms of discrimination in such critical areas as … public services") with ADA 42 U.S.C. § 12101(a)(3) (finding "discrimination against individuals with disabilities persists in such critical areas as …access to public services"). Applying the same statutory analysis utilized by Justice Scalia with regard to the ADA, I find an Ohio court to be an instrumentality which may also be sued under the "express statutory authority" of the Rehabilitation Act.

V.      CONCLUSION

For the foregoing reason, upon reconsideration, I find Title II of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act provide the "express statutory authority" necessary to sue Defendant Lucas County Common Pleas Court, Domestic Relations Division. I reaffirm my previous holding, denying Defendant Lucas County Common Pleas Court's motion to dismiss on alternative grounds.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge